UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KENNETH SNIDER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:18-CV-1948-SPM |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Kenneth Snider ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

## I. FACTUAL BACKGROUND

At the first hearing before the ALJ, held on November 7, 2013, Plaintiff testified that he stopped working because of his leg and back pain; that he spends about 60% of the day lying down because it is the only way he can get relief for his back pain; that he can only sit in a chair for 20 to 30 minutes before he gets sharp pain in his lower back; that he has numbness and tingling in his feet and legs; and that walking more than 150 to 200 yards is sometimes a struggle. (Tr. 237-40, 243). At the second hearing before the ALJ, held on April 6, 2017, Plaintiff testified that he has had injections for his back pain but never got more than three weeks of relief from them; that he had a spinal stimulator surgically implanted that reduced his pain by about half when it was working but which was not working at the time; that on his bad days, his pain level is at an eight or a nine and he just lies on the couch all day; that he has pain and numbness in his legs and feet that cause him to stumble and trip; that he would not be able to do a job that permitted him to change between sitting and standing because he would need to lie down; that since a shoulder surgery, he cannot lift above his head; and that he has depression and trouble focusing and concentrating. (Tr. 1437-41, 1444, 1446, 1452).

The Court accepts as true the facts as presented in Plaintiff's Statement of Uncontroverted Material Facts (Doc. 21), which Defendant does not dispute (Doc. 26-1). Briefly, the record shows that Plaintiff has undergone several years of regular and extensive treatment for degenerative disc disease of the lumbar spine and accompanying leg and back pain and numbness, including narcotic and non-narcotic medications, radiofrequency ablation procedures, epidural spine injections, and multiple surgeries related to a spinal cord stimulator. He has also had surgery for a shoulder injury and has received treatment for diabetes and associated foot problems and for hypertension. Below, the Court will cite to specific portions of the record as needed to address the parties' arguments.

## II. PROCEDURAL BACKGROUND

On July 31, 2012, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since April 26, 2012, due to lumbar disc displacement, neuritis and radiculitis, spinal stenosis, idiopathic scoliosis and kyphoscoliosis, nerve impingement in leg, chronic leg weakness, chronic severe back and leg pain and immobility, and insomnia. (Tr. 383-97, 420). On September 21, 2012, his application was denied. (Tr. 311-22). Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 326-27). After a hearing held on November 7, 2013, the ALJ issued an unfavorable decision on November 21, 2013. (Tr. 213-24). On December 18, 2013, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 212). On March 13, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). Plaintiff sought review in this Court, and on September 20, 2016, this Court reversed the Commissioner's decision and remanded the case. (Tr. 1765-77). On April 6, 2017, a second hearing was held before the ALJ. (Tr. 1432-61). On June 30, 2017, the ALJ issued a second unfavorable decision. (Tr. 1338-59). On July 10, 2017, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council. (Tr. 1876). On September 25, 2018, the Appeals Council declined to assume jurisdiction. (Tr. 1032-35). Thus, the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through June 30, 2012; that he has not engaged in substantial gainful activity since April 26, 2012, the alleged onset date; that Plaintiff had the severe impairments of degenerative joint disease, degenerative disc disease of lumbar spine and cervical spine status post

cervical discectomy, chronic asthmatic bronchitis, tobacco dependence disorder, chronic pain syndrome, anxiety, large full-thickness rotator cuff tendon tear, and diabetes; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 1343-44). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[2] except he cannot climb ladders, ropes and scaffolds. He can occasionally climb ramps and stairs. [Plaintiff] can occasionally balance, stoop, crouch, and crawl. He cannot work at unprotected heights, around moving mechanical parts or other such hazards. [Plaintiff] is limited to performing simple, routine tasks but not at a fast pace such as an assembly line. [Plaintiff] cannot have concentrated exposure to extreme heat, cold, dust, fumes or other pulmonary irritants. He can occasionally reach overhead with right upper extremity.

(Tr. 1346). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 1350). At Step Five, relying on the testimony of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative jobs such as hand packer (Dictionary of Occupational Titles No. 559.687-014) and assembler (Dictionary of Occupational Titles No. 739.687-066). (Tr. 1350). Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from April 26, 2012, through the date of her decision. (Tr. 1351).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds, arguing that the ALJ did not give adequate weight to the opinion of his treating physician, that the ALJ failed to properly assess

---

[2] Sedentary work is defined as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

6

his RFC, and that the ALJ's determination regarding the credibility of his subjective complaints was flawed.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings,

the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Remand is Required for Reconsideration of the Opinion of Dr. Damba and Reconsideration of the RFC Assessment

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009).

"When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (internal quotation

---

[3] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Plaintiff filed his application in July 2012, so the Court will apply the version of the regulations that applies to claims filed before March 27, 2017.

8

marks omitted). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). The failure to give good reasons for discrediting a treating physician's opinion is a ground for remand. *See Anderson v. Barnhart,* 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand.").

On May 9, 2017, Plaintiff's primary care physician, Dr. Victoria Damba, completed a Physical RFC Questionnaire for Plaintiff. (Tr. 2418-20). Dr. Damba opined that Plaintiff would constantly experience pain or other symptoms severe enough to interfere with attention and concentration needed for simple work tasks; that he could not walk any city blocks without rest or severe pain; that he could sit for 30 minutes at one time without getting up; that he could stand for ten minutes at one time; that he could sit for less than two hours in an eight-hour workday; and that he could stand/walk for less than two hours in an eight-hour workday. She opined that he would need periods of walking around during an eight-hour workday every five to ten minutes, with each period lasting one to five minutes. She found that he would need to to be able to shift positions at will from sitting, standing, or walking, and that he would need to take unscheduled breaks every hour, with each break lasting 15 to 20 minutes. (Tr. 2419). She opined that Plaintiff could occasionally lift up to 10 pounds and never 20 pounds. (Tr. 2420). She opined that he would likely be absent from work as a result of his impairments or treatment more than four days per month. (Tr. 2420). She noted that his symptoms are chronic back pain, paresthesias in the feet, fatigue, and anxiety, and she characterized his pain as "moderately severe." (Tr. 2418). She noted

9

that he was on multiple medications that could cause drowsiness and affect his work, and that he has difficulty concentrating and problems remembering things. (Tr. 2418, 2420).

The ALJ described Dr. Damba's opinion and gave it "little weight," reasoning as follows:

> Dr. Dambo [sic] had been treating the claimant only since July 2016, and she was treating the claimant primarily for diabetes and other conditions aside from his back. Hence, her opinion about his restrictions due to his primary impairment, his back, is not very persuasive. Furthermore, her opinion is inconsistent with the evidence that the spinal cord stimulator gave the claimant greater than 70 percent relief by October 2016. Her opinion is inconsistent with examinations that failed to reveal signs indicative of the limitations she described such as persistent muscle weakness and muscle atrophy. For these reasons, I give her opinion little weight.

(Tr. 1350).

After careful review, the Court agrees with Plaintiff that the ALJ did not give good reasons, supported by substantial evidence, for discounting the opinion of Dr. Damba. The first reason the ALJ offered for giving little weight to Dr. Damba's opinion was that she had been "been treating [Plaintiff] only since July 2016"—about ten months before she authored her opinion. (Tr. 1350). A review of the record, however, shows that Dr. Damba began treating Plaintiff in October 2014 and saw him regularly during the 27 months before she authored her May 2017 opinion. (Tr. 120-24, 1374-76, 1617-21, 2114-16, 2119-21, 2123-25, 2128-30, 2133-36, 2139-41, 2143-45, 2148-50, 2153-54).

The second reason offered by the ALJ was that Plaintiff "was treating [Plaintiff] primarily for diabetes and other conditions aside from his back," and so "her opinion about his restrictions due to his primary impairment, his back, is not very persuasive." (Tr. 1350). The Court acknowledges that Dr. Damba was Plaintiff's primary care physician rather than his pain management specialist or neurosurgeon, and most of Dr. Damba's notes address primarily diabetes and hypertension. However, Plaintiff's ongoing back pain is mentioned at nearly every visit with Dr. Damba (Tr. 123-24, 1040-43, 1070, 1074, 1086, 1100, 1360, 1374, 2119, 2123, 2128, 2133,

10

2139, 2143); she appears to be the physician who referred him to neurosurgery for his back and leg pain in late 2016 (Tr. 2401); and she is the doctor he saw for a transition of care following his 2017 emergency room visit for back pain (Tr. 1070). Thus, it is clear that she was monitoring his back condition as well as his other conditions. Although it was proper for the ALJ to consider the nature of Dr. Damba's treatment relationship with Plaintiff, that does not, standing alone, constitute a sufficient reason for giving only little weight to her opinion, particularly in the absence of any contrary opinions from any treating or examining source with greater specialization or focus on Plaintiff's back problems.

The third reason the ALJ gave for discounting Dr. Damba's opinion was that Dr. Damba's opinion was "inconsistent with the evidence that the spinal cord stimulator gave [Plaintiff] greater than 70 percent relief by October 2016." (Tr. 1350). A review of the record shows, however, that the "70 percent relief" Plaintiff had from a spinal cord stimulator was from a short-term trial, and that the permanent spinal cord stimulator that was implanted after that trial provided relief only for a very short period before it stopped functioning. On September 1, 2016, it was noted that a spinal cord stimulator trial had decreased Plaintiff's pain by 70%, that medications and other treatments had not provided relief, and that Plaintiff decided to go ahead with surgery to implant a permanent spinal cord stimulator system. (Tr. 2401-03). The spinal cord stimulator was placed on October 5, 2016 (Tr. 2205). In late October and November, Plaintiff reported "pretty good relief since the placement"(Tr. 2200, 2205), and his reported pain level was only a 4/10 in December 2016 (Tr. 2195). However, by February 2017, Plaintiff reported pain at a 9/10, and he reported that his spinal cord stimulator was not working as it should be and was not pulsating. (Tr. 2188, 2409). Imaging revealed that the stimulator had come out of position, and surgery was performed to re-implant it. (Tr. 2411). However, two days after that surgery, the battery stopped working.

11

(Tr. 2411-12). In March 2017, Plaintiff reported constant back pain, radiating down both legs, at a 7/10. (Tr. 2184). A plan was made for surgery to replace the battery (Tr. 2415). In June 2017, it was noted that the battery replacement surgery could not take place because Plaintiff's A1C levels were too high, so the stimulator still was not working, and Plaintiff complained of back pain radiating down both legs. (Tr. 1315). In October 2017, Plaintiff's nerve stimulator was still not working, and he went to the emergency room for back pain. (Tr. 1314). In November 2017, Plaintiff saw Dr. Damba, who noted that he had essentially constant lower lumbar back pain with radicular right leg pain. (Tr. 1072). In May 2018, Dr. Damba again noted that Plaintiff had essentially constant lumbar spine pain, along with radicular right leg pain, and she also noted pain with range of motion in the back. (Tr. 1040-43). In June 2018, Dr. Damba again noted back pain, and noted that Plaintiff could not have surgery unless he got his A1C below 7.0. (Tr. 1100). These notes suggest that the spinal cord stimulator provided relief for Plaintiff only for a few months, at most; there is no evidence that it provided any relief after February 2017. Thus, it is not inconsistent with Dr. Damba's April 2017 opinion regarding Plaintiff's limitations, and this reason given by the ALJ is not supported by substantial evidence.

The fourth reason given by the ALJ for discounting Dr. Damba's opinion is that her opinion is "inconsistent with examinations that failed to reveal signs indicative of the limitations she described such as persistent muscle weakness and muscle atrophy." (Tr. 1350). However, a review of the record show that although Plaintiff's physicians did not note "persistent muscle weakness" or "muscle atrophy," the record is replete with abnormal examination findings that do support Dr. Damba's opinions. At a 2012 consultation, Dr. Tony Chien noted findings including spasm and pain with palpation over the paraspinal muscle of the lumbar spine, positive Patrick-Faber's test in both hips, pain with flexion and extension of the lumbar spine, and positive straight

leg test. (Tr. 988-99). Dr. Damba consistently noted a right leg limp affecting Plaintiff's gait, as well as paresthesias (Tr. 2141, 2145, 2133, 2130, 2125, 2121, 2125, 1376, 1363, 1088, 1072, 1042, 1102). Plaintiff's other treatment providers frequently noted abnormal findings with respect to Plaintiff's lower back and legs, including findings of symptomatic lumbar spine range of motion, tenderness in the lumbar spine, positive slump test, decreased sensation in the lower extremities, and antalgic gait. (Tr. 20, 24, 31, 35, 37, 38, 41-42, 48-49, 52-53, 63, 480, 485, 609, 748, 817, 882, 887, 899, 904, 909, 913, 918, 927, 969, 983, 1001, 1005, 1009, 1154, 1158, 1164, 1169, 1175, 1180, 1185, 1190, 1195, 1200, 1317, 1322, 1328, 1334, 2185, 2190, 2197, 2202, 2207, 2210, 2213-14, 2219, 2226-27, 2233, 2329, 2247, 2271, 2276-77, 2284-85, 2290-91, 2295-96, 2300-01, 2305-06, 2310-11, 2319, 2324, 2329, 2334, 2339). These findings tend to support Dr. Damba's opinions regarding Plaintiff's inability to sit for extended periods, his need to change positions frequently, and his need for frequent breaks to walk around or lie down.

In light of the above, the Court cannot find that the reasons given by the ALJ for giving little weight to the treating physician's opinions were supported by substantial evidence. The Court also notes that this is not a case where the ALJ gave little weight to the opinion of the treating physician but found some other medical opinion more consistent with the record. Here, there were no other opinions from treating, examining, or reviewing physicians bearing on Plaintiff's ability to function in the workplace or explaining how the presence or absence of particular objective findings would support Plaintiff's ability to perform the requirements of sedentary work. Given the many abnormal examination findings in the record and the absence of any medical opinion evidence contrary to that provided by Plaintiff's treating physician, it is not apparent to the Court how the ALJ determined that Plaintiff could perform requirements of sedentary work despite his back pain and leg and foot problems.

The Court also notes that the ALJ's decision to discount Dr. Damba's opinion may have affected the outcome of the case. At the hearing, the Vocational Expert testified that a person who would need an at-will sit/stand option, who would need to occasionally get up and walk around for a few minutes outside of scheduled breaks, who would need unscheduled breaks, or who would be absent from work more than once a month would be unable to do the jobs identified by the vocational expert. (Tr. 1459-61). Thus, the ALJ might have reached a different conclusion regarding Plaintiff's disability claim had the ALJ properly weighed Dr. Damba's opinions regarding these matters.

Because the ALJ failed to give good reasons, supported by substantial evidence, for giving little weight to Dr. Damba's opinions, and because that failure may have affected the outcome of the case, remand for further consideration is required. *See Clover*, 2008 WL 3890497, at *12; *Anderson*, 312 F. Supp. 2d at 1194. Because the ALJ reconsideration of Dr. Damba's opinion may affect her assessment of Plaintiff's RFC and the credibility of Plaintiff's subjective complaints, the Court need not address Plaintiff's remaining arguments.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42

U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of February, 2020.